THE STATE v. LICHLITER, *Appellant.*

1. **Criminal Practice**: SUFFICIENCY OF INDICTMENT: FELONY. It seems that the sufficiency of an indictment for a felony is properly tested by a demurrer or motion in arrest and not by a motion to quash.

2. **Criminal Law**: OBTAINING GOODS BY FALSE PRETENSES: INDICTMENT. An indictment for obtaining goods under false pretenses under Revised Statutes, section 1335, held sufficient.

3. ———: ———: VENUE OF OFFENCE. Where the goods were delivered to a railway company in the city of St. Louis, consigned to the defendants in Jasper county, the venue of the offence is properly laid in said city, and this although the goods were ordered by mail by defendants from Jasper county.

4. ———: EVIDENCE. The disposition of the goods by the defendant is admissible in evidence, on a trial for obtaining goods by false pretenses, for the purpose of showing his intent in obtaining them.

5. **Criminal Practice**: NEW TRIAL: NEWLY-DISCOVERED EVIDENCE. An application for a new trial on the ground of newly-discovered evidence is insufficient when it is not shown that the evidence came to the applicant's knowledge after the trial, or that before the trial he had no knowledge of it.

*Appeal from St. Louis Criminal Court.*—HON. HENRY D. LAUGHLIN, Judge.

AFFIRMED.

*Taylor & Pollard* for appellant.

(1) A defendant may, at any time before he announces ready for trial, withdraw his plea of not guilty and move to quash the indictment. *Nicholls v. State,* 2 South. [N. J.] 539 ; *Commonwealth v. Chapman,* 11 Cush. 422 ; *Rex v. Heane,* 4 B. & S. 433 ; *Rex v. Wilson,* 6 Q. B. 620 ; *Rex v. James,* 12 Cox C. C. 127. (2) The indictment shows on its face that the crime charged was committed in Jasper county, and hence the

criminal court of the city of St. Louis had no jurisdiction to try the case. *State v. Dennis*, 80 Mo. 594; *State v. Schaeffer*, 89 Mo. 280. (3) The testimony of an expert as to his conclusions drawn from defendant's books should not have been received. Whar. Crim. Evid., secs. 405, 411, and cases thereunder cited. (4) Testimony of defendant's actions weeks and months after the commission of the crime charged should not have been received. (5) The sixth instruction asked by defendant was the law, and the court in modifying it rendered it entirely unintelligible and meaningless to defendant's harm. *Greer v. St. Louis*, 80 Mo. 555; *Clark v. Kitchen*, 52 Mo. 316; *Dunn v. Dunaker*, 87 Mo. 597; *Young v. Ridenbaugh*, 67 Mo. 574. (6) The proof at the trial failed to show that the crime charged was committed in St. Louis; but the proof subsequently offered clearly showed that it was committed, if at all, in Joplin, Jasper county, and hence the trial court had no jurisdiction. *State v. Schaeffer*, 89 Mo. 280; *State v. Dennis*, 80 Mo. 594; *Calkins v. Hellman*, 47 N. Y. 449; Benjamin on Sales, sec. 140, *et seq.*; *Maxwell v. Brown*, 39 Me. 98; *Frostburg v. Glass Co.*, 9 Cush. 115; *Rodgers v. Phillips*, 40 N. Y. 519; 2 Bishop on Crim. Law [7 Ed.] sec. 486.

*B. G. Boone*, Attorney General, *A. C. Clover*, Circuit Attorney, and *C. O. Bishop* for the state.

(1) There was no error in refusing to permit appellant to withdraw his plea and move to quash. The indictment had been pending five months, a mistrial had been had and the cause was called a second time for trial. Appellant's action was clearly to obtain delay. (*a*) Motions to quash have not been favored by this court. "The power of quashing indictments is a discretionary one, and very rarely to be exercised. The sufficiency of an indictment is properly tested by

demurrer or motion in arrest, to which the defendant should in general be left in indictments for felonies. *State v. Rector*, 11 Mo. 28 ; *State v. Bohannon*, 21 Mo. 490, 491 ; *State v. Conrad*, 21 Mo. 271. (*b*) While no power can prevent the trial court from quashing an indictment at any stage of the proceedings, " the better doctrine is believed to be that, in the absence of statutory changes of common-law rules, the motion has no relation to any plea, that it should be more favored at an early stage of the proceedings than at a later, and that whenever presented the court will exercise its discretion whether or not to hear it then." 1 Bishop's Crim. Proc. [7 Ed.] sec. 762. (*c*) The position of appellant is precisely the same as if his motion to quash had been formally overruled, and the rule seems to be well settled in this state that such action is not reviewable here unless followed and presented by motion in arrest. (2) The indictment is sufficient. 1 Bishop Crim. Proc., sec. 556 ; 1 Whart. Prec., sec. 528. (3) The testimony that defendants secreted their property was admissible as going to show their intent in obtaining the goods. *State v. Dennis*, 80 Mo. 589. (4) The record shows that the offence was committed in the city of St. Louis. The delivery of the goods in the city of St. Louis to the carrier, consigned to defendants, was a delivery of the goods to the consignees. Upon such delivery, Cupples & Company parted with the possession, and thereafter had no right or title, save the right of stoppage *in transitu*. *State v. Dennis*, 80 Mo. 594 ; *Norris v. State*, 25 Ohio St. 217.

NORTON, C. J.—Defendant and William H. Fallis were jointly indicted in the criminal court of the city of St. Louis at its July term, 1881, and charged with obtaining goods in the city of St. Louis under false pretenses. At the May term, 1882, of said court, a trial was had resulting in the conviction of the defendants. Fallis obtained a new trial, and Lichliter, after making

an unsuccessful motion for new trial, appealed to the St. Louis court of appeals, from which court the cause has been transferred to this court.

It appears from the record that, on the fifth of December, 1881, defendants were arraigned, pleaded not guilty, and were put upon trial, which resulting in a mistrial, the cause was continued and specially set for trial on the twentieth of February, 1882, at which time defendants appeared and filed a motion for a special *venire* of citizens from the county, and the same day asked leave to withdraw the plea of not guilty, and to file a motion to quash ; the court refused to allow this for the reason that said application was made too late. This action of the court was excepted to at the time and is assigned for error here. It is said in case of *State v. Rector*, 11 Mo. 28, that "the power of quashing indictments is a discretionary one, in all cases. * * * The sufficiency of an indictment is properly tested by a demurrer or motion in arrest. In indictments for lesser offences, below the grade of felony, the court may in its discretion quash when the indictment is plainly defective, but in indictments for felonies, the defendant should, in general, be left to his demurrer or a motion in arrest." See also, *State v. Bohannon*, 21 Mo. 491 ; *State v. Conrad*, 21 Mo. 271. In view of the ruling made in the cases above cited, we are not prepared to say that the court committed reversible error in refusing the request of defendants to withdraw the plea of not guilty and file a motion to quash, and this is especially so if the indictment preferred is sufficient in law, as we think the indictment in this case is. It is based upon section 1335, Revised Statutes. It lays the venue of the offence at the city of St. Louis, state of Missouri, it distinctly alleges the false pretense upon which the defendants obtained the goods, negatives the truth of the pretense, and avers that the owners of the goods, relying upon its

truth, parted with their property, particularly describing it and stating its value. It is in conformity with the precedents laid down in 1 Wharton's Precedents.

It is also insisted that the judgment should be reversed on the ground that the evidence shows that the offence, if committed at all, was committed in Jasper county. The record is very voluminous, and as no objection has been interposed to the abstract of the evidence furnished by respondent, we shall adopt it as being correct; and so much of it as is material to the question is as follows: In the fall of 1880, the traveling salesman of the firm of Samuel Cupples & Company, of St. Louis, met defendants in the town of Joplin, Jasper county. He was informed by them that they were about to form a business partnership in Joplin, and desired to purchase a carload of wooden and willowware from said Cupples & Company on a credit of sixty days. The salesman told them that in order to obtain credit it would be necessary for them to furnish his firm with a statement of their financial condition. Such a statement, setting forth their assets and liabilities, was made in writing in the name of Fallis & Lichliter, which was signed by E. A. Fallis and mailed from Joplin, and received by Cupples & Company in the city of St. Louis. A written order for the goods specified in the indictment was also received from Fallis & Lichliter. Cupples & Company, being satisfied with said statement, which represented the assets of the firm to be largely in excess of their liabilities, and relying upon its truth, filled the order, and delivered the goods to the St. Louis & San Francisco Railway Company, at their depot in the city of St. Louis, on the twenty-seventh of October, 1880, addressed and consigned to Fallis & Lichliter at Joplin, the said railway company agreeing, by a bill of lading acknowledging the receipt of the goods from said Cupples & Company, to deliver the same to Fallis & Lichliter at Joplin, which was done a few days thereafter.

Cupples & Company drew a draft on Fallis & Lichliter for the amount of the bill at sixty days from the date of delivery, which was accepted. Before the maturity of the draft in December following, Fallis & Lichliter made an assignment, paying but a few cents on the dollar of their indebtedness.

Martin Fallis, a brother of one of the defendants, among other things, testified that just prior to the purchase of the goods from Cupples & Company, defendant Fallis requested witness to make a written statement of the financial condition of the firm to be sent to St. Louis; that he made a true statement of their assets and liabilities and submitted it to defendants, who told him that they must make a better showing or quit the business, as such a statement would not buy goods; that, under directions of defendants, and from figures furnished by them, and upon their assurance that no harm should come to him from the act, he made the statement for Cupples & Company and signed the firm name and also the name of E. O. Fallis, his wife, thereto, by their direction and in their presence; that this statement was wholly false, known to be so by defendants, was intended to deceive, and made for the purpose of obtaining goods and credit from Cupples & Company, and that he sealed it up and mailed it to Cupples & Company at St. Louis; that the goods ordered in connection with the statement were received at Joplin from the railway company and went into the general stock of the firm of Fallis & Lichliter. The evidence tends further to show that, after the receipt of these goods and for a period of about six weeks before the assignment, large quantities of goods were taken from the store, and deposited at other places in other sections of the state and in Kansas, and that considerable sums of money collected by defendants were retained by them so that but little was left for creditors when the assignment was made. The falsity of the

statement, and the purchase and receipt of the goods on the strength of it, from Cupples & Company, is virtually conceded, but a large amount of evidence was introduced to establish the fact that defendants were mere employes of the firm of Fallis & Lichliter and that they had nothing to do with making said statement or obtaining the goods.

It is contended by counsel that, under the facts disclosed by the evidence, the criminal court of the city of St. Louis had no jurisdiction of the case, but that defendants should have been indicted and prosecuted in Jasper county, and in support of this contention has cited the case of *State v. Schaeffer*, 89 Mo. 271. The indictment in that case was founded on section 1561, Revised Statutes, and it is there held that as the money obtained by the fraudulent representation was paid to Schaeffer's agent in New York, the offence, if any, was committed in New York, for which a prosecution in Missouri could not be maintained. That case, so far from sustaining the contention made, overthrows it, for in it the case of *Norris v. State*, 25 Ohio St. 217, which is analogous and on all fours with the case in hand, is approvingly cited and quoted from. There the defendant was a resident of Clark county, and by fraudulent representations as to his solvency, contained in a letter sent by him to the Akron Sewer Pipe Company, located in Summit county, induced said company to ship him by rail to Clark county a lot of sewer pipe ; he was indicted in Clark, where he received the pipe sent by railroad by the Sewer Pipe Company, but the Supreme Court held that the crime was committed in Summit county, remarking : "That the weight of authority is clearly that the railroad company was the agent of defendant for receiving the goods at Akron and carrying them to Springfield, and the delivery to it by the Sewer Pipe Company was, in legal contemplation, a delivery of the goods to defendant at Akron."

It is also insisted that the court erred in receiving evidence as to the conduct of defendants after receiving the goods, in disposing of them and appropriating to themselves the proceeds of sales up to the time of the assignment. This evidence, we think, was admissible as bearing upon the question of defendants' intent in obtaining the goods. In the case of *State v. Dennis*, 80 Mo. 589, Dennis obtained, by false pretenses, twenty-four mules in Randolph county, which were shipped to St. Louis, and evidence was received showing that he got the money for which they were sold in St. Louis, and ran off with it, as tending to show that his intent in obtaining the mules was to cheat and defraud.

The objection made to the reception of expert testimony as to what the books of the firm of Fallis & Lichliter showed the financial condition of the firm to be will not be considered here, for the reason that the record does not show that any exception was saved to the action of the court in overruling it.

The following instruction was not given as asked, but was modified by the court and then given, and this action is also complained of as error:

"The court instructs the jury, that although they may believe from the evidence that the defendants, or either, did make false entries in the account books, or issue fraudulent notes, or that they did dispose of, appropriate, conceal, or make way with, by themselves or others, of assets or moneys of the firm of Fallis & Lichliter, still unless the jury further believe from the evidence, beyond a reasonable doubt, that the defendants did make, and were present counseling, aiding, and abetting the making of the statement to Samuel Cupples & Company, introduced in evidence, and thereby did procure the property mentioned in the indictment, with intent to defraud Samuel Cupples & Company out of the purchase price thereof, the jury will return a verdict of not guilty."

This instruction the court gave with the following modification:

"But by the terms 'were present, counseling, aiding, and abetting the making of the statement,' is not meant that they were all actually present at the very time when said statement was reduced to writing, but that the statement was the result of a common understanding and fraudulent conspiracy on the part of said Mart P. Fallis and the defendants primarily or at the time entered into by them. In other words the making of said statements created something more than the mere writing of it. And, hence, if they advised, counseled, or abetted Mart P. Fallis, or invited him to make it before he actually reduced it to writing, and also so plausibly, designedly with an intent to cheat and defraud Cupples & Company, and with knowledge that it was false, they made it as much as he, in contemplation of law." The addition to or modification of the instruction is simply explanatary of the terms "present, counseling, aiding, and abetting," which are used in the instruction, and does not in any manner change the principle announced in the instruction as asked. While the modification may be subject to verbal criticism, its meaning is plain enough, and we cannot see how it was calculated to mislead the jury. The instructions given by the court of its own motion, in connection with those given for defendants, all asked by them being given, the last one of which was given with the modification above noted, presented the whole case fairly to the jury.

The affidavits accompanying the motion for a new trial fail to disclose any diligence whatever on the part of defendants to discover the evidence which it is proposed to offer in the event of a new trial being granted. They do not allege that the evidence first came to their knowledge after the trial, nor do they aver that before the trial, they had no knowledge of it.

Finding no error in the record the judgment is affirmed. All concur.