# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2325

_____

| | | |
|---|---|---|
| Bunzl Distribution USA, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri |
| Richard Dewberry, | * | |
| | * | [UNPUBLISHED] |
| Appellee. | * | |

_____

Submitted: January 10, 2001

Filed: June 11, 2001

_____

Before LOKEN and BYE, Circuit Judges, and SACHS,[1] District Judge.

_____

BYE, Circuit Judge.

Bunzl Distribution USA, Inc. (Bunzl) fired Richard Dewberry for insubordination. Dewberry challenged his termination in arbitration pursuant to his employment contract. The arbitrator determined that Bunzl had no cause for Dewberry's termination, and awarded damages. Bunzl filed a motion in district court to vacate the award, claiming that the arbitrator exhibited a "manifest disregard" of the

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, sitting by designation.

law by failing to apply Missouri law correctly.  The district court[2] held that the arbitrator did not manifestly disregard the law.  We affirm.

Bunzl, a St. Louis company, markets and distributes plastic and paper products to supermarkets.  On January 1, 1997, Bunzl hired Richard Dewberry as a sales representative to represent the company in Pennsylvania.  Dewberry's employment contract was "governed by the laws of the State of Missouri."  Bunzl could "terminate the term of this Agreement at any time for cause."  The term "cause" included "insubordination by Employee related to his employment."  Any termination dispute had to be resolved by binding arbitration.  An employee terminated without cause could ask for one year's base salary following the date of termination.

On November 9, 1997, Bunzl fired Dewberry for insubordination after he and Greg Hicks, an executive vice president, exchanged profanities in a phone conversation.  The phone conversation concerned the firing of Jeff Shepherd, Dewberry's friend and co-worker.  Dewberry demanded arbitration.  He claimed his firing was "without cause" and he sought one year's base salary.

In the arbitration, Bunzl argued that Missouri law required Dewberry to prove that Bunzl arbitrarily and capriciously concluded that Dewberry was insubordinate. See Superior Gearbox Co. v. Edwards, 869 S.W.2d 239, 244 (Mo. Ct. App. 1993) (discussing a jury instruction in which "just cause" was defined as "a real cause or basis for dismissal as distinguished from an arbitrary whim or caprice").  Bunzl relied upon a Missouri case which defined insubordination as including "a defiant attitude and 'rebellious' [or] 'mutinous'" conduct, McClellon v. Gage, 770 S.W.2d 466, 469 (Mo. Ct. App. 1989), and another Missouri case which held that addressing a supervisor with profane or vulgar language constituted "misconduct" justifying a discharge.  See

---

[2]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

Simpson Sheet Metal, Inc. v. Labor & Indus. Comm'n, 901 S.W.2d 312, 314 (Mo. Ct. App. 1995).

The arbitrator determined that Dewberry was not insubordinate, and therefore that Bunzl terminated him without cause. The arbitrator referred to the definition of insubordination in the "Roberts Dictionary of Industrial Relations." The Roberts Dictionary indicates that "[u]nder certain circumstances, use of objectionable language or abusive behavior toward supervisors may be deemed to be insubordination because it reveals disrespect of management's authority." The arbitrator held that the "certain circumstances" were not present in this case because *both* Hicks and Dewberry used profanity in the phone conversation. The arbitrator concluded that "Mr. Hicks stooped to the level of Mr. Dewberry by engaging in the same type of disrespect. The situation became a mutual use of shop talk. Therefore, under these circumstances, there is no finding of insubordination."

Bunzl filed a motion in federal district court to vacate the arbitrator's award. Bunzl argued that the arbitrator's decision exhibited a manifest disregard of the law because the arbitrator's own factual findings mandated a determination that Dewberry had been insubordinate. Bunzl also argued that the arbitrator manifestly disregarded the burden of proof under Missouri law by ignoring Dewberry's requirement to prove Bunzl acted arbitrarily and capriciously when it determined that Dewberry was insubordinate.

The district court affirmed the arbitrator's award. First, the district court noted that the arbitrator had not made factual findings that mandated a finding of insubordination, but instead that the arbitrator specifically found that Dewberry was not insubordinate. Secondly, with respect to the burden of proof/arbitrary-and-capricious issue, the district court noted that the arbitrator did not specifically articulate the burden of proof under Missouri law, was not required to do so, and that the arbitrator's silence

on this issue was not enough to conclude that the arbitrator based his decision on a manifest disregard of the law. Bunzl timely appealed the decision of the district court.

Conclusions of law in a district court order affirming an arbitrator's award are reviewed de novo, and any findings of fact are reviewed for clear error. Kiernan v. Piper Jaffray Cos., Inc., 137 F.3d 588, 591 (8th Cir. 1998). Judicial review of an arbitration decision itself is extremely limited. See 9 U.S.C. § 10 (enumerating the limited circumstances in which the Federal Arbitration Act (FAA) authorizes a court to vacate an arbitration award). Unless one of the circumstances set forth in the FAA applies, an arbitrator's award can be set aside only if "it is completely irrational or evidences a manifest disregard for law." Lee v. Chica, 983 F.3d 883, 885 (8th Cir. 1993) (internal quotations omitted).

The sole issue on appeal is whether the arbitrator's failure to refer to the burden of proof under Missouri law establishes that the arbitrator manifestly disregarded the law. Like the district court, we find no "manifest disregard" of the law present under these circumstances:

> Despite [Bunzl's] vigorous claims to the contrary, neither the award itself nor the record before us suggests that the arbitrator[] in any way manifestly disregarded the law in reaching [his] decision. In Wilko [v. Swan, 346 U.S. 427, 436-37 (1953)], the Court carefully distinguished an arbitrator's interpretation of the law, which is insulated from review, from an arbitrator's disregard of the law, which may open the door for judicial scrutiny. Further, such disregard must be made clearly to appear and may be found when arbitrators understand and correctly state the law, but proceed to disregard the same. In the case before us, the arbitrator['s] decision does not clearly delineate the law applied, nor expound the reasoning and analysis used. Rather, the award presents . . . only a cursory discussion of what the arbitrator[] considered to be the key points underlying the award. It therefore cannot be said that it clearly appears that the arbitrator[] identified applicable law and proceeded to reach a contrary position in spite of it. Nor does the absence of express reasoning

by the arbitrator[] support the conclusion that [he] disregarded the law. Arbitrators are not required to elaborate their reasoning supporting an award, and to allow a court to conclude that it may substitute its own judgment for the arbitrator's whenever the arbitrator chooses not to explain the award would improperly subvert the proper functioning of the arbitral process. . . . We may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts. Although this result may seem draconian, the rules of law limiting judicial review and the judicial process in the arbitration context are well established and the parties here, both sophisticated in the realms of business and law, can be presumed to have been well versed in the consequences of their decision to resolve their disputes in this manner.

Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 750-51 (8th Cir. 1986); see Painewebber Group, Inc. v. Zinsmeyer Trusts P'ship, 187 F.3d 988, 994 (8th Cir. 1999) ("Arbitration panels are not required to explain their decisions.").

Bunzl concedes that arbitrators are not required to explain the reasons for their decisions, but argues that when an arbitrator elects to issue a written decision, the written decision cannot be ignored. While the arbitrator elected to issue a written decision in this case, he didn't specifically discuss the burden of proof under Missouri law. "It therefore cannot be said that it clearly appears that the arbitrator[] identified applicable law and proceeded to reach a contrary position in spite of it." Stroh Container, 783 F.2d at 750; see also Kiernan, 137 F.3d at 594-95 (rejecting a claim of "manifest disregard" involving an arbitration panel's alleged misstatement or misapplication of the burden of proof).

We therefore affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.